Filed 11/25/14  In re Allen S. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Siskiyou)

----

| | |
|---|---|
| In re ALLEN S. et al., Persons Coming Under the Juvenile Court Law. | C075033 |
| SISKIYOU COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. No. SCJVSQ105097501, SCJVSQ105097601, SCJVSQ5097301) |
| Plaintiff and Respondent, | |
| v. | |
| JENNIFER J., | |
| Defendant and Appellant. | |

Jennifer J., mother of the minors, appeals from orders of the juvenile court denying her petition for modification and issuing letters of guardianship.  (Welf. & Inst. Code,[1] §§ 366.26, 388, 395.)  Mother argues the juvenile court erred in denying her

---

[1]     Further undesignated statutory references are to the Welfare and Institutions Code.

1

section 388 petition because she showed both changed circumstances and that the proposed order was in the minors' best interests. Mother contends that because the court so erred, reversal of the court's appointment of a guardian for the minors is also required. We affirm.

FACTS

The minors, M., age 7; Julianna, age 3; and Allen, age 13 months, were detained in February 2010 due to parental substance abuse and neglect. The juvenile court sustained the petition, found the minors were Indian children and, in April 2010, ordered reunification services for mother. After 12 months of services, the minors had several extended visits with mother from March 2011 until July 2011 when the minors were returned to foster care following a domestic violence incident between mother's teenage son and the father of the three minors.[2] Mother's services were terminated at the 18-month review hearing in August 2011 and a section 366.26 hearing was set for the three minors.

The report for the section 366.26 hearing recommended long-term foster care with a goal of guardianship as the permanent plan. The minors were placed in a tribal foster home in Yreka, California. Mother continued to reside in Happy Camp, California. From July 2011 to December 2011, mother attended "seventy-one percent" of visits and missed four visits for positive drug tests. Mother continued to have contact with father despite his negative impact on the family.

In February 2012, mother filed a petition for modification seeking return of the minors because she was continuing in services and had addressed many of the problems which led to removal. In March 2012, the minors were moved to a relative placement in Crescent City, California. The Siskiyou County Health and Human Services Agency

_____

[2]     Father's services were terminated at the six-month review hearing.

2

(Agency) recognized visitation would be more difficult due to the increased distance between mother's home and the placement and to the thorny relationship between mother and the relative and sought a reduction in the frequency of visits. The Yurok and Karuk tribes supported the relative placement. The Yurok tribe opposed returning the minors to mother because she was unable to stay sober or protect the minors from abuse.

At the section 366.26 hearing in March 2012, mother withdrew her petition for modification. The court adopted the Agency's recommendation for long-term relative placement.

A review report in July 2012 stated the minors remained in the relative placement. Mother continued in family maintenance services and had not tested positive but continued to have parenting issues and spend time with father. The court continued the minors in the relative placement and set an interim review hearing.

An interim report in December 2012 continued to recommend the minors remain in the relative placement. The relative was now willing to accept guardianship. Mother's status remained unchanged. Mother continued to participate in services, had a positive drug test, and showed lack of parenting judgment. At the hearing, mother informed the court she was not getting visitation as previously ordered. The court ordered the Agency to use best efforts to coordinate visits. The court adopted the review orders as corrected and set both a section 366.26 hearing and a hearing on visitation. At the visitation hearing, the court ordered a minimum of two visits a month in addition to telephone calls.

The section 366.26 report recommended guardianship with the relative caretaker with ongoing visitation for mother and termination of the dependency. The minors were doing well in the placement and were involved in school and other activities. Some visitation had occurred but not at the frequency previously ordered. The relative caretaker reported that mother's telephone calls to the minors were sporadic and the minors were disappointed when she failed to call after promising to do so. Mother had finished outpatient drug treatment.

3

In May 2013, mother filed a petition for modification seeking return of the minors and alleging that she had completed all plan programs and that the relative caretaker was interfering with visits.

The combined hearing on the petition for modification and the selection of a permanent plan commenced in May 2013. There was conflicting testimony on whether mother was in Crescent City for an extended period of time and whether she availed herself of visits during that period or spent her time at a casino. The social worker acknowledged the relationship between mother and the relative caretaker was not good, however, it was unclear whether the problems with visits and contact between the minors and mother at tribal and family events was due to the poor relationship or the caretaker's strict interpretation of visit supervision compounded by mother's transportation issues. Mother was afraid that if guardianship were granted, she would have no contact with the minors. Mother had completed substance abuse and domestic violence programs, but the social worker was concerned that drug testing results suggested she was taking more pain pills than were prescribed. Mother testified she had been clean and sober for 32 months. There was conflicting testimony on whether mother was continuing her relationship with father despite his history of domestic violence. Following the first day of testimony, the parties argued the visitation and drug testing issues. The court suggested that guardianship was the best permanent plan if visitation could be maintained and set a mediation on visitation issues.

The mediation resulted in a partial agreement regarding visitation and telephone contact but no agreement was reached on supervision. A social worker's memo in June 2013 reported that mother submitted a hair follicle drug test which showed methamphetamine use within 90 days of the test. The memo also mentioned the mixed results of the mediation and recommended that twice monthly visitation was sufficient.

At the renewed hearing, mother objected to the validity of the hair follicle drug test and the court directed a new test. A second hair follicle drug test also showed the

4

presence of methamphetamine within the last 90 days. An Agency memo of August 5, 2013 suggested mother manipulated M. and the relative caretaker to have M. attend a visit when she had told mother she would not be there. When the hearing resumed in August 2013, mother acknowledged she had been getting most of the ordered visits and again attacked the validity of the two hair follicle drug tests. Mother argued she had done all the services she was required to do, had not used methamphetamine, was working and wanted the minors returned home. The court continued the hearing for further information.

Approximately three weeks later, at the hearing in September 2013, mother testified she had transportation issues which had prevented her from attending recent visits. The social worker acknowledged the relative caretaker had canceled one of the visits to take the minors clothes shopping. There was conflicting evidence about how many times mother called to talk to the minors. The court agreed that the hair follicle drug test results had some puzzling aspects but concluded that mother did use methamphetamine. The court denied the petition for modification, stating that the most important thing was that the situation was best for the minors and not unduly disruptive. The court granted the Agency's request for guardianship with the relative caretaker and set visitation at three times a month, unsupervised with the mother allowed to be present at family and tribal events.

DISCUSSION

Mother contends the juvenile court abused its discretion by denying her petition for modification because she had shown both changed circumstances and that the proposed order was in the minors' best interests.

5

A parent may bring a petition for modification of any order of the juvenile court pursuant to section 388 based on new evidence or a showing of changed circumstances.[3] "The parent requesting the change of order has the burden of establishing that the change is justified. [Citation.] The standard of proof is preponderance of the evidence." (*In re Michael B.* (1992) 8 Cal.App.4th 1698, 1703.) Determination of a petition to modify is committed to the sound discretion of the juvenile court and, absent a showing of a clear abuse of discretion, the decision of the juvenile court must be upheld. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319; *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.) The best interests of the child are of paramount consideration when the petition is brought after termination of reunification services. (*In re Stephanie M.*, at p. 317.) In assessing the best interests of the child, the juvenile court looks not to the parent's interests in reunification but to the needs of the child for permanence and stability. (*Ibid.*; *In re Marilyn H.* (1993) 5 Cal.4th 295, 309.)

The evidence showed mother had completed various services, but there was also evidence showing she had not benefited from them. We resolve the conflicting evidence, as we must, in favor of the prevailing party. (*In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214.) The evidence showed that mother, despite her extensive substance abuse treatment over a period of several years, had used methamphetamine sometime between April and July 2013 and may have been abusing her prescription medication. Further, mother continued to have contact with father, who was known to have violent tendencies and whose prior violence had led to the termination of the trial visits at home. Moreover,

---

[3]     Section 388 provides, in part: "Any parent . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court." (§ 388, subd. (a)(1).) The court must set a hearing if "it appears that the best interests of the child . . . may be promoted by the proposed change of order . . . ." (§ 388, subd. (d).)

there was evidence mother had actively manipulated one of the minors to get her to come to a visit after the minor had told mother she would not be there.  Although there had been some changes in mother's life, most of the issues which led to removal still remained.  On the other hand, the minors were stable and thriving in their placement with a relative caretaker who also could assure that they were involved in their tribal culture. The juvenile court did not abuse its discretion in denying the petition for modification.

Because we find no error in denying the petition for modification, we need not reach mother's remaining issue.

## DISPOSITION

The orders of the juvenile court are affirmed.


      ROBIE      , Acting P. J.


We concur:


     DUARTE    , J.


     HOCH    , J.

7